

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: March 02, 2020.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: § | | CASE NO. 18-50085-CAG |
| § | | |
| FIRST RIVER ENERGY, LLC, § | | CHAPTER 11 |
| Debtor. § | | |

_____

| | | |
|---|---|---|
| DEUTSCHE BANK TRUST COMPANY § | | |
| AMERICAS, AGENT, § | | |
| Plaintiff, § | | |
| v. § | | ADV. PROC. NO. 18-05015-CAG |
| § | | |
| FIRST RIVER ENERGY, LLC, Debtor-in-Possession; § | | |
| U.S. ENERGY DEVELOPMENT CORPORATION; § | | |
| AGERON ENERGY, LLC; PETROEDGE ENERGY IV, § | | |
| LLC; TEAL NATURAL RESOURCES, LLC; § | | |
| VICEROY PETROLEUM, LP; RLU OPERATING, § | | |
| LLC; DEWBRE PETROLEUM CORPORATION; § | | |
| JERRY C. DEWBRE, TRUSTEE; AMERICAN § | | |
| SHORELINE, INC.; TEXPATAPIPELINE COMPANY; § | | |
| AURORA RESOURCES CORPORATION; AWP § | | |
| OPERATING CO.; TEXRON OPERATING LLC; § | | |
| GALVESTON BAY OPERATING CO. LLC; § | | |
| MAGNUM PRODUCING, LP; MAGNUM § | | |
| ENGINEERING COMPANY; MAGNUM OPERATING § | | |
| LLC; ROCK RESOURCES, INC; KILLAM OIL CO., § | | |
| LTD.; AND ENERGY RESERVES GROUP, LLC, § | | |
| Defendants. § | | |

**MEMORANDUM OPINION DENYING DEBTOR/CROSS-CLAIMANT FIRST RIVER
ENERGY, LLC'S PARTIAL MOTION FOR SUMMARY JUDGMENT (ECF NO. 172)**

1

Came on for consideration Debtor/Cross-Claimant First River Energy, LLC's Partial Motion for Summary Judgment (ECF No. 172) ("Debtor's Partial MSJ"),[1] Producers' Response to Debtor/Cross-Claimant First River Energy, LLC's Partial Motion for Summary Judgment (ECF No. 182) ("Producers' Response"), RADCO Operations, LP and RHEACO, Ltd.'s Response to First River Energy, LLC's Partial Motion for Summary Judgment (ECF No. 183) ("Intervenors' Response"), Debtor/Cross-Claimant First River Energy, LLC's Reply to Producers' Response to Partial Motion for Summary Judgment (ECF No. 187) ("Reply to Producers' Response"), and Debtor/Cross-Claimant First River Energy, LLC's Reply to RADCO Operations, LP and RHEACO, Ltd.'s Response to Partial Motion for Summary Judgment (ECF No. 188) ("Reply to Intervenors' Response"). At the hearing on December 9, 2019, the parties presented argument on Debtor's Partial MSJ. Thereafter, the Court took this matter under advisement. For the reasons stated herein, the Court finds that Debtor's Partial MSJ is DENIED.

## JURISDICTION

As an initial matter, the Court finds that it has jurisdiction over the proceeding under 28 U.S.C. §§ 1334, 157(a), and 157(b)(1). This proceeding is a core proceeding under 28 U.S.C. §§ 158(b)(2)(A), (B), (K), and (O). All parties have consented to the Court's entry of final orders and final judgment. (*See* ECF Nos. 57, 62, 63). This matter is within the Court's authority and jurisdiction pursuant to the Supreme Court's ruling in *Wellness Int'l Network, Ltd. v. Sharif (In re Sharif)*, 135 S. Ct 1932 (2015).

## FACTUAL BACKGROUND

On January 12, 2018, First River Energy, LLC ("Debtor" or "First River") filed a voluntary petition for chapter 11 under the Bankruptcy Code. Pre-petition, Debtor was a midstream provider

---

[1] Debtor filed its Appendix of Facts in Support of Debtor/Cross-Claimant First River Energy, LLC's Partial Motion for Summary Judgment (ECF No. 173) ("Debtor's Appendix").

2

that purchased oil directly from upstream producers, and re-sold and delivered aggregated oil to third-party downstream purchasers. Pre-petition, Debtor entered into agreements with a number of upstream oil and gas producers to purchase oil and gas from wells situated in Texas and Oklahoma.[2] Generally, the terms of Producers' sale of oil to Debtor were delineated in purchase contracts ("Producer Agreements") entered into by Debtor and Producers individually. Producers sold oil to Debtor through December 2017.

RADCO Operations, LP ("RADCO") and RHEACO, Ltd. ("RHEACO") (collectively, "Intervenors") also produced oil and gas in Texas and sold it to Debtor pre-petition. RADCO entered into a Crude Oil Purchase Agreement with O.G.O. Marketing, LLC ("RADCO Agreement"), a Texas limited liability company that was eventually acquired by First River. RADCO and Debtor allege that RADCO entered into a purchase agreement with O.G.O. Marketing, LLC and sold oil to Debtor through December 2017, but neither RADCO nor Debtor produced a copy of a purchase agreement.

On July 23, 2015, Debtor entered into a credit agreement (the "Credit Agreement") with Deutsche Bank AG New York Branch as collateral agent, lender, issuing lender, and swing line lender ("Lender"), Deutsche Bank Trust Company Americas as Administrative Agent ("Agent"), and several banks and other financial institutions as lenders. Also, on July 23, 2015, Debtor entered into a guarantee agreement and a security agreement (the "Security Agreement") with Agent and Lender for the funds advanced in the Credit Agreement. On July 23, 2015, Agent executed and filed UCC-1 financing statements with the Delaware Department of State to perfect its security

---

[2] The following upstream producers are Defendants in the numbered adversary proceeding: U.S. Energy Development Corporation; Ageron Energy, LLC; Petroedge Energy IV, LLC; Teal Natural Resources, LLC; Crimson Energy Partners IV, LLC; Viceroy Petroleum, LP; RLU Operating, LLC; Dewbre Petroleum Corporation; Jerry C. Dewbre, Trustee; American Shoreline Inc.; Texpata Pipeline Company; Aurora Resources Corporation; AWP Operating Co.; Texron Operating LLC; Magnum Producing, LP; Magnum Engineering Company; Magnum Operating LLC; Rock Resources, Inc.; Killam Oil Co., Ltd.; and Energy Reserves Group, LLC (hereinafter, "Producers").

3

interest in substantially all of Debtor's assets.

After defaulting on payments due to Agent in November and December of 2017, Debtor discontinued nearly all its transactions involving the sale of oil and gas. On January 12, 2018, when Debtor filed its chapter 11 petition, Debtor had not paid Producers and Intervenors for any oil and gas product received in December 2017. As the bankruptcy case progressed, Agent, Producers, and Intervenors all alleged that each had a valid, perfected, first priority lien in substantially all of Debtor's assets, including: Debtor's oil and gas production, deposit accounts, proceeds, and accounts receivable.

## PROCEDURAL BACKGROUND

On February 21, 2018, Agent initiated this adversary proceeding seeking declaratory judgment on the validity, extent, and priority of Agent's liens in substantially all of Debtor's assets. Thereafter, Agent filed its *Motion for Summary Judgment and Alternative Motion for Partial Summary Judgment* (ECF No. 89) (the "Agent MSJ"), to which Producers and Intervenor filed their Responses (ECF Nos. 103, 105). The Agent MSJ argued that Agent had a perfected, first-priority security interest in substantially all of Debtor's assets. Notably, as a threshold matter, the Agent MSJ argued that regardless of lien perfection and priority issues, Producers could not assert a security interest in Debtor's assets because certain Producer Agreements incorporated the Conoco Phillips General Provisions dated 1993 ("Conoco Phillips Provisions"). The Conoco Phillips Provisions are a set of oil and gas industry standards that include a warranty provision. (ECF No. 89). Agent argued that the warranty contained in the Conoco Phillips Provisions caused Producers to waive their ability to assert a lien against Debtor's assets (the "Waiver Argument"). (*Id.*). The Agent MSJ also argued that warranty language in the RADCO Agreement caused RADCO to waive its ability to assert a lien against Debtor's assets. (*Id.*).

4

The Court issued its *Memorandum Opinion Granting, in Part and Denying, in Part Agent's Motion for Summary Judgment and Alternative Motion for Partial Summary Judgment* (ECF No. 114) ("Opinion on Agent MSJ"). The Opinion on Agent MSJ denied summary judgment as to the Waiver Argument. The Opinion on Agent MSJ also found that—to the extent to which producers of oil and gas in Oklahoma ("Oklahoma Producers") could produce evidence demonstrating extent and amount of sums owed by Debtor for pre-petition purchase of oil and gas—Oklahoma Producers had a first-priority, automatically arising statutory lien under Section 549.1 *et seq* of the Oklahoma Statutes (the "Oklahoma Lien Act").[3] The Opinion on Agent MSJ, however, granted summary judgment on Agent's argument that it had a first-priority security interest in Debtor's goods, inventory, accounts, and proceeds that primed any liens or security interests alleged by Producers and Intervenors that produced oil and gas in Texas ("Texas Producers"). On April 22, 2019, the Court entered its *Memorandum Opinion in Support of Certification of a Direct Appeal to the Fifth Circuit Court of Appeals* (ECF No. 135) and *Certification of Direct Appeal* (ECF No. 136) on the following questions presented:

> (1) Does UCC § 9-301, which is the same in Texas and Delaware, dictate that Delaware law governs perfection and priority of liens between Texas Producers and Agent where the personal property at issue is accounts receivable, cash, cash equivalents, and inventory held by Debtor, an LLC organized under the laws of the state of Delaware?; and (2) Does UCC § 9-301, which is the same in Texas and Delaware, dictate that the law of the state where Debtor is incorporated determines perfection and priority of security interests among Agent, a secured lender, and Producers of oil and gas in Texas, regardless of the non-standard provision located at Section 9.343 of the Texas Business and Commerce Code?

(ECF Nos. 135, 136). Producers also filed a Petition for Leave for Direct Appeal From the United States Bankruptcy Court for the Western District of Texas, San Antonio Division that the Fifth

---

[3] The Opinion on Agent MSJ afforded the Oklahoma Producers the opportunity to provide evidence to support their oil and gas rights under the Oklahoma Lien Act. As of the date of this Opinion, Oklahoma Producers have not asserted any lien rights in this adversary proceeding.

Circuit Court of Appeals ("the Fifth Circuit") granted (Court of Appeals Docket No. 19-90012, Document 00515033202). As of the date of entry of this Opinion, the legal issues certified for direct appeal to the Fifth Circuit are scheduled for oral argument.

After the Fifth Circuit granted leave to appeal certain questions of law contained in the Opinion on Agent MSJ, Debtor filed its Second Amended Answer to Complaint, Statement of Position, and Cross-Claims Against Producers (ECF No. 171) ("Debtor's Second Amended Complaint"). Debtor's Second Amended Complaint included a cross-claim requesting declaratory judgment that Producers waived their rights, if any, to assert liens or security interests in the oil they sold Debtor by expressly warranting that the oil was free of liens and encumbrances. (*Id*.). The Second Amended Complaint also requested recovery of attorney's fees and costs. (*Id*.). Thereafter, Debtor filed its Partial MSJ.

## PARTIES' CONTENTIONS

Debtor purchased oil from Producers pursuant to the Producer Agreements. In relevant part, the Producer Agreements state:

> **Special Provisions**: Conoco Phillips General Provisions dated 1993 and subsequent amendments dated 2009 are made a part of this contract by reference hereto. However, the terms herein shall control if there is any conflict between these terms and those in the General Provisions.

The Conoco Phillips Provisions[4] contain the following provision:

> **Warranty:** The Seller warrants good title to all crude oil delivered hereunder and warrants that such crude oil shall be free from all royalties, liens, encumbrances and all applicable foreign, state and local taxes.

---

[4] The Conoco Phillips General Provisions are general terms and conditions referenced in Conoco Phillips' contracts for crude oil and condensate in the United States. General Terms & Conditions for U.S. Crude Oil Contracts, http://www.conocophillips.com/about-us/how-energy-works/doing-business-with-us/general-terms-conditons-for-u-s-crude-oil-contracts/. The Conoco Phillips Provisions are a "standard-form industry document . . . [that] sets forth certain general rules to govern domestic oil trading." *Lion Oil Trading & Transp., Inc. v. Statoil Mktg. & Trading (US) Inc.*, 728 F. Supp. 2d 531, 532–33 (S.D.N.Y. 2010).

(ECF No. 173, *Cross-Claimant-1*) ("Conoco Phillips Warranty"). Debtor argues that Producers cannot assert a security interest in the oil sold to Debtors because the Conoco Phillips Warranty incorporated in the Producer Agreements served as an express waiver of any liens.

Similarly, Debtor purchased oil from RADCO pursuant to the unsigned RADCO Agreement. The RADCO Agreement does not contain reference to the Conoco Phillips Provisions, but does include the following provision:

> **Warranty of Title and Authority to Sell**: Seller hereby warrants and guarantees that the title to the portion of the crude oil sold and delivered hereunder which is owned by Seller is free and clear of all liens and encumbrances and warrants that as to the remaining portion of the crude oil sold and delivered hereunder Seller has the right and authority to sell and deliver said crude oil for the benefit of the true owners thereof.

(ECF No. 190, Hearing Exhibit 8) ("RADCO Warranty Provision"). Debtor argues the RADCO Warranty Provision was a clear and unambiguous waiver by RADCO of any lien rights.

Ultimately, the Parties dispute the meaning and application of the Conoco Phillips Warranty and the RADCO Warranty Provision (collectively, the "Contract Warranties"). Debtor argues that the Contract Warranties waive Producers and Intervenors' ability to assert any purported lien rights under Section 9.343 of the Texas Business and Commerce Code ("Texas § 9.343")[5] and/or the Oklahoma Lien Act because the plain and unambiguous language of the Contract Warranties provide that the sale was to be "free and clear of all liens and encumbrances." As an initial matter, Debtor cites ***Solar Applications Eng., Inc. v. T.A. Operating Corp.***, to support its position that statutory liens may be contractually waived under Texas law. 327 S.W.3d 104,

---

[5] Texas § 9.343 is a non-uniform amendment to Texas's version of the U.C.C. that "provides a security interest in favor of interest owners, as secured parties, to secure the obligations of the first purchaser of oil and gas production, as debtor, to pay the purchase price." Tex. Bus. & Com. Code Ann. § 9.343(a). In the Agent MSJ, Agent argued successfully that Texas § 9.343 did not apply in this case to allow Texas Producers to have a first priority lien in Debtor's oil, gas, and proceeds thereof because Debtor is organized under the laws of Delaware, and Delaware requires the filing of a financing statement to perfect a security interest in goods, inventory, account, and proceeds. *(Opinion on Agent MSJ,* ECF No. 114) (citing Del. Code Ann. tit. 6 §§ 9-301(1), 9-307(e), and 9-322(a)(1)).

112 (Tex. 2010). Debtor also cites *First Interstate Bank of Ariz. v. Interfund Corp.*, to support its argument that under Texas law, waiver is a valid defense to an action to enforce a security interest. 924 F.2d 588, 5995 (5th Cir. 1991). Finally, Debtor relies on a series of cases emanating from the *SemCrude* bankruptcy. *Arrow Oil & Gas, Inc. v. J. Aron & Co. (In re SemCrude L.P.)*, 504 B.R. 39 (Bankr. D. Del. 2013); *In re SemCrude, L.P.*, 864 F.3d 280 (3d Cir. 2017); *New Dominion, LLC v. J. Aron & Co (In re SemCrude, L.P.)*, 2018 WL 481862 (Bankr. D. Del. Jan. 17, 2018) (collectively, the "*SemCrude* Cases"). In the *SemCrude* Cases, the Delaware Bankruptcy Court and the Third Circuit evaluated whether the Conoco Phillips Warranty waived upstream producers' rights to allege a statutory lien in oil, gas, or proceeds thereof against downstream purchasers.[6] Debtor avers that the *SemCrude* Cases are dispositive here because the courts in those cases ruled that the Conoco Phillips Warranty created a waiver of any statutory lien rights which Producers and Intervenors may have otherwise asserted under Texas § 9.343.

In response, Producers argue that the waiver issue is moot because the Court already ruled that the Conoco Phillips Warranty and the RADCO Warranty Provision were not waivers in its Opinion on Agent MSJ. Alternatively—if the waiver issue is not moot—Producers argue the Contract Warranties do not create a waiver because the Contract Warranties are nothing more than a warranty providing that oil in the hand of the *purchaser* from Debtor (i.e., the downstream purchaser) is not subject to Producers' liens.[7] Further, Producers argue—assuming *arguendo* that the Conoco Phillips Warranty meant that liens securing the purchase price did not exist—only the

---

[6] The same Conoco Phillips Warranty at issue in the present case was incorporated in agreements between upstream producers and debtor SemCrude.
[7] Producers liken the substance of the Producer Warranty Provisions to two state law provisions that protect buyers in the ordinary course of business: (1) Texas § 9.343(e), which provides that security interests and liens created by Texas § 9.343 are "cut off by sale to a buyer from the first purchaser who is in the ordinary course of the first purchasers business under Section 9.320(a)"; and (2) Section 52-549.6 of the Oklahoma General Statutes, which provides that a purchaser in the ordinary course takes "free of any oil and gas lien otherwise applicable to the oil or gas so purchased." Tex. Bus. & Com. Code § 9.343(e); Okla. Stat. tit. 52, § 549.6. The Court does not need to address these arguments in this Opinion.

purchaser from the Debtor could assert the "warranty." Even then, Producers assert that the remedy for a breach of warranty action is an action for damages, not a determination that "waiver" exists.[8] Finally, Producers argue that the Court cannot enter summary judgment because affidavits[9] attached to Producers' Response to MSJ as evidence create fact issues as to estoppel and failure of consideration.

Intervenors' Response argues first that the Court should deny summary judgment because Debtor has failed to adduce summary judgment evidence demonstrating an executed contract between Debtor and either Intervenor. Next, Intervenors argue that Debtor's Partial MSJ fails as a matter of law because the RADCO Warranty Provision does not prove waiver as a matter of law. Finally, Intervenors argue that the Court should deny summary judgment because the issue in dispute regarding the Contract Warranties is moot because the Court already ruled that the lien rights under Texas § 9.343 were not available to Producers.

**LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986). Bankruptcy Rule 7056 applies Rule 56(c) of the Federal Rules of Civil Procedure to adversary proceedings. If summary judgment is appropriate, the Court may resolve the case as a matter of law. ***Celotex Corp.***, 477 U.S. at 323; ***Blackwell v. Barton***, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit has stated

---

[8] Producers further argue that Debtor cannot bring a cause of action for damages here because Debtor was paid by its customers for the oil, and no claims have been asserted against Debtor's customers. Because the question of law addressed in Debtor's Partial MSJ is whether the Contract Warranties resulted in Producers and RADCO waiving their purported statutory lien rights, the Court will not discuss whether Debtor has a colorable cause of action for damages under the Producer Agreements.

[9] The affidavits state that Producers sold oil and gas to Debtor without knowledge of Debtor's financial condition, the actions of Agent, and with the expectation of repayment. (ECF No. 182).

"[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

To the extent that the non-moving party asserts the existence of factual disputes, the evidence offered by the non-moving party to support those factual contentions must be of sufficient quality so that a rational fact finder might, at trial, find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) ("[a]dverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."). If the record "taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007).

In determining whether a genuine issue of material fact exists, the nonmoving party must respond to a proper motion for summary judgment with specific facts demonstrating that such genuine issue exists. The Court must view all evidence in the light most favorable to the non-moving party. *Crawford v. Formosa Plastics Corp. La.*, 234 F.3d 899, 902 (5th Cir. 2000). If summary judgment is appropriate, the Court may resolve the case as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

## ANALYSIS

### I. The Court Did Not Resolve the Issue of Waiver in its Memorandum Opinion

In its Partial MSJ, Debtor acknowledges that Agent's MSJ raised the legal issue of whether the Contract Warranties caused Producers and Intervenors to waive their rights to assert a lien under Texas § 9.343 or any other statute. Debtor alleges, however, that the Court found in its Opinion on Agent MSJ that Agent lacked standing to rely on the warranty of title language in

Producers' Agreements and the RADCO Agreement because Agent was not a purchaser of oil. In response, Producers argue that summary judgment is improper because the Court already ruled in its Opinion on Agent's SJ that the Conoco Phillips Warranty did not result in a waiver of lien rights. Intervenors argue that the Court should deny the MSJ because the Court has already resolved the dispute at issue on one legal theory—that lien rights under Texas § 9.343 are unavailable to Producers and Intervenors because Debtor was incorporated in Delaware.

The Court's Opinion on Agent MSJ analyzed whether it was proper for *Agent*–not Debtor– to assert that the Conoco Phillips Warranty in the Producer Agreements caused Producers to waive their rights to assert a lien in oil and gas and proceeds thereof under Texas § 9.343. The Court denied Agent's MSJ on the issue of waiver because its legal argument relied on the ***SemCrude*** Cases, which were inapposite because they addressed rights among purchasers of oil and gas.

After the Court ruled on Agent's MSJ, Debtor filed its Second Amended Answer, which includes a cross-claim seeking declaratory judgment that "Producers waived their rights, if any, to assert liens in the Debtor's property, by operation of the express warranties contained in their agreements with Debtor." (ECF No 171, ¶ 60). In addition, Debtor, Producers, and Intervenors have stipulated that the Court must resolve whether the Conoco Phillips Warranty and/or Intervenor Warranty Language caused a waiver of liens under Texas § 9.343 or the Oklahoma Lien Act (ECF No. 167). Now, Debtor's MSJ seeks resolution of a dispute over the meaning of the Warranty Language in the Producer and RADCO Agreements of which Debtor is a party.

## II.     The Contract Warranties Do Not Create A Waiver

Debtor argues the Conoco Phillips Warranty incorporated in the Producer Agreements and the Warranty Language in the RADCO Agreement serve as clear and unambiguous language that Producers and RADCO waived any statutory lien rights under Texas § 9.343. In support, Debtor cites the ***SemCrude*** Cases. The ***SemCrude*** Cases involved facts similar to those here. Like the

11

Debtor in this case, SemCrude was a midstream provider of oil and gas that purchased oil from upstream producers and sold oil to downstream purchasers. *J. Aron*, 504 B.R. at 40. When SemCrude filed for bankruptcy, a number of upstream producers had not been paid for the oil provided to debtor. *Id*. Pre-petition, debtor sold oil to downstream purchasers and was either compensated for the oil, or had a corresponding account receivable that was outstanding. *Id*. Upstream producers sought compensation for the unpaid oil provided to SemCrude (that was, in turn, sold to downstream purchasers) by filing lawsuits to establish state law lien rights against downstream purchasers. *Id*. at 47. Downstream purchasers intervened in those lawsuits, seeking a determination that the oil and gas purchased from debtors was free and clear of any liens or other rights of upstream producers that originally sold product to the debtors. *Id*. at 48.

In *J. Aron & Co. v. SemCrude, L.P. (In re SemCrude, L.P)* ("the *J. Aron* Case"), downstream purchasers alleged, in part, that any oil and gas purchased from SemCrude was purchased free and clear of all security interests held by upstream producers because downstream purchasers were buyers for value under U.C.C. § 9-317.[10] *Id*. at 52–53. Alternatively, downstream purchasers argued that upstream producers waived any security interest pursuant to U.C.C. § 9-315 because upstream producers' contracts with debtor incorporated the Conoco Phillips Warranty. *Id*. at 53.

When evaluating whether downstream purchasers were buyers for value under U.C.C. § 9-317,[11] the Delaware Bankruptcy Court in the *J. Aron* Case considered whether downstream purchasers had actual knowledge of upstream producers' security interests. *Id.* at 55–59. The court

---

[10] Downstream purchasers also argued that they were buyers in the ordinary course of business under U.C.C. § 9-320. *Id*. at 53. The *J. Aron* court granted summary judgment, finding that downstream purchasers were buyers in the ordinary course. *Id*. at 68.

[11] Under § 9-317 of the U.C.C., a buyer takes free and clear of any security interest "if the buyer gives value and receives delivery of the collateral without knowledge of the security interest or agricultural lien before it is perfected." Del. Code Ann. tit 6 § 9-317.

found that "case law supports the proposition that an express 'free and clear' warranty [like the Conoco Phillips Warranty] precludes a finding of actual knowledge of a security interest" when evaluating the applicability of a buyer for value defense under U.C.C. § 9-317. *Id*. at 59 (citing ***CIT Group Comm. Servs., Inc. v. Constellation Energy Commodities Grp.***, No. 12–16–ART, 2012 WL 4603049, at *9 (E.D. Ky. Sept. 30, 2012)). Because the agreements between upstream producers and midstream provider/debtor SemCrude incorporated the Conoco Phillips Warranty providing that oil and gas was sold free and clear of liens, upstream producers could not establish that downstream purchasers had actual knowledge of Upstream Producers' security interests. 504 B.R. at 60–61. As such, the court granted summary judgment and found that downstream purchasers were buyers for value under U.C.C. § 9-317. *Id*. The court did not reach the merits on whether the Conoco Phillips Warranty or any other express contractual warranty language in contracts between any of the parties resulted in a waiver of a security interest under U.C.C. § 9-315. *Id*. at 68, n. 89. The Third Circuit affirmed the Delaware Bankruptcy Court's ruling in the ***J. Aron*** Case. ***In re SemCrude***, 864 F.3d 280 (3d Cir. 2017).

Subsequent to the ***J. Aron*** Case, New Dominion, LLC ("ND"), another upstream producer, filed suit against downstream purchaser J. Aron, alleging that the Oklahoma Oil & Gas Lien Act[12] permitted it to foreclose on a statutory lien against J. Aron for oil and gas purchased from midstream provider/debtor SemCrude. ***New Dominion, LLC v. J. Aron & Co. (In re SemCrude, L.P.)***, Case No. 08-11525 (BLS), 2018 WL 481862, at *1 (Bankr. D. Del. Jan. 17, 2018). Each of ND's producer contracts with SemCrude expressly incorporated the Conoco Phillips Warranty. *Id*. The ND court held that "any right ND may have had to assert a lien in its oil was waived when the

---

[12] The Oklahoma Lien Act, which applies to Oklahoma Producers in this case, repealed the Oklahoma Oil & Gas Lien Act of 1988 that was discussed in the *SemCrude* Cases. *See Gaskins v. Texon, LP*, 32 P.3d 985, 987–90 (Okla. Civ. App. 2013) (stating that the Oklahoma Legislature repealed the existing Lien Act of 1988 and enacted the Oklahoma Lien Act in 2010 "in response to the [*SemCrude*] litigation").

13

oil was sold under the express warranty embodied in the Conoco General Provisions." *Id*. at *4. In support, the Delaware Bankruptcy Court quoted dicta from a footnote in its opinion in the *J. Aron* Case stating, "any producers who sold oil under an express warranty that the oil was free and clear of all liens and encumbrances effectively waived any statutory interest in the oil sold." *Id*. (quoting *J. Aron*, 504 B.R. at 60 n. 66 (Bankr. D. Del. 2013)).

Here, Debtor's legal argument relies squarely on the Delaware Bankruptcy Court and Third Circuit's opinions in the *SemCrude* Cases, which are persuasive, non-binding authority. The Court acknowledges that the *SemCrude* Cases are the only cases construing: (1) the parameters of the Conoco Phillips Warranty, and (2) whether the Conoco Phillips Warranty effectively serves as a waiver of any lien, encumbrance, or security interest that could otherwise be brought by a producer of oil and gas against a midstream provider and/or a downstream purchaser. *See J. Aron & Co. v. SemCrude, L.P. (In re SemCrude)*, 504 B.R. 39 (Bankr. D. Del. 2013); *In re SemCrude*, 864 F.3d 280 (3d Cir. 2017); *New Dominion, LLC v. J. Aron & Co. (In re SemCrude, L.P.)*, Case No. 08-11525 (BLS), 2018 WL 481862 (Bankr. D. Del. Jan. 17, 2018). This Court, however, declines to follow the reasoning provided in the *SemCrude* Cases.

Again, the Court reiterates its prior finding in its Opinion on Agent's MSJ—the *SemCrude* Cases deal with an upstream producer's ability to assert statutory liens against downstream purchasers. (ECF No. 114). In *J. Aron*, the Delaware Bankruptcy Court explicitly stated that because it found that downstream purchasers were buyers in the ordinary course and buyers for value, it "[did] not reach the merits on [d]ownstream [p]urchasers' U.C.C. defenses under . . . § 9-315 for waiver." *Id*. at 68 n. 89. In affirming *J. Aron*, the Third Circuit did not rule on whether the Conoco Phillips Warranty caused upstream producers to waive statutory lien rights. *In re SemCrude*, 864 F.3d 280 (3d Cir. 2017). The Third Circuit expressed in dicta that "the industry

. . . uses the [Conoco Phillips Provisions] that oil is sold free and clear of any liens because it is a hard-to-trace, liquid asset that flows throughout the country," and "no midstream or downstream oil purchaser would buy oil from Producers if they sought to encumber oil as it flowed through interstate commerce and changed hands." *SemCrude*, 864 F.3d at 300. The *New Dominion* court adopted this dicta as its reasoning to support its holding that ND, an upstream producer, waived any right to assert a lien in its oil against downstream purchasers after selling the oil under the express warranty embodied in the Conoco Phillips General Provisions. 2018 WL 481862, at *4.

The Parties' disputes over the meaning and application of the Conoco Phillips Warranty and RADCO Warranty Provision is a contract dispute. In contract interpretation disputes, the Court must "first look to the plain language of the contract to determine whether it is ambiguous." *Horn v. State Farm Lloyds*, 703 F.3d 735, 738 (5th Cir. 2012) (citing *Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc.*, 220 F.3d 679, 681 (5th Cir. 2000) (applying Texas law). "In Texas, whether a contract is ambiguous is a question of law." *Id*. (citing *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010)). A contract is ambiguous if "its plain language is amenable to more than one reasonable interpretation." *Id*. (citation omitted). If a contract is unambiguous, the Court must apply its plain meaning and enforce it as written. *Id*. (citing *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006).

The Court finds the Conoco Phillips Warranty and the RADCO Warranty provisions are unambiguous. "When a contract is unambiguous, [the] court will generally not look beyond the four corners of the document." *United States v. Long*, 722 F.3d 257, 263 (5th Cir. 2013). Therefore, the Court is obligated to enforce the plain language of the Conoco Phillips Warranty and the RADCO Warranty. Debtor urges the Court to adopt the Delaware Bankruptcy Court's reasoning that "any right that [an upstream provider] may have had to assert a lien in its oil was

waived when the oil was sold [to midstream provider] under the [Conoco Phillips Warranty]" because reviving and asserting a lien against a downstream purchaser is "wholly impractical in the context of the energy market." *New Dominion*, 2018 WL 481862, at *4. The Court declines to allow considerations of practicality in the oil and gas market to guide its interpretation of the plain language of the Conoco Phillips Warranty and RADCO Warranty Provision. Additionally, it is not within the Court's province to consider the contracting parties' intentions when they entered into the Producer Agreements and RADCO Agreement.

### A. Warranty Language in RADCO Agreement

The RADCO Agreement includes a section titled "Warranty of Title and Authority to Sell." That section provides: "Seller hereby warrants and guarantees that the title to the portion of the crude oil sold and delivered hereunder which is owned by Seller is free and clear of all liens and encumbrances . . . ." (ECF No. 172). Debtor asserts that this language is "plain and unambiguous that the sale [of oil and gas to Debtors] was to be free and clear." (*Id.*). While the Court agrees with Debtor that the language of the RADCO Agreement is unambiguous, the Court finds that the plain language of the RADCO Agreement provides that the RADCO Warranty Language is a warranty of title, *not* a waiver of lien rights against Debtor or subsequent purchasers. Terms are assigned their "ordinary and generally accepted meaning unless the contract directs otherwise." *Northfield Ins. Co. v. Herrera*, 751 F. App'x 512, 515 (5th Cir. 2018) (citing *Great Am. Ins. Co. v. Primo*, 512 S.W .3d 890. 893 (Tex. 2017). Debtor has not provided binding case law or evidence.[13] supporting its argument that the warranty in the RADCO Agreement should, despite the plain language of the contract, be applied or construed as a waiver. As such, the Court denies

---

[13] Even if there was evidence to support the Debtor's contention that the warranty section of the RADCO Agreement should be construed as a waiver, that evidence might be of limited value because "Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity." *Am. Tobacco Co.*, 463 F.3d at 407.

Debtor's request for summary judgment that the RADCO Agreement waived RADCO's ability to assert a lien under Texas § 9.343.

### B. Conoco Phillips Provisions in Producer Agreements

The Conoco Phillips Provisions incorporated into the Producer Agreements include a section titled "Warranty" which states: "the Seller warrants good title to all crude oil delivered hereunder and warrants that such crude oil shall be free from all royalties, liens, encumbrances and all applicable foreign, federal, state and local taxes. . . ." (ECF No. 173, *Cross-Claimant-1*). The section of the Producer Agreements at issue is titled "Warranty," and the plain language of the warranty provision states that seller "*warrants* good title . . . [that] shall be free from all royalties, liens, and encumbrances . . . ." (*Id.*) (emphasis added). The Court finds that the Conoco Phillips Provision at issue is unambiguously defined and described as a warranty—not a waiver—and must be enforced as such. The Court will not morph a warranty into a waiver in contravention of the plain language of the contract.

Moreover, the Court notes that in the Conoco Phillips Provisions incorporated in the Producer Agreements, there are two separate sections for warranties and waivers.[14] (ECF No. 173, *Cross-Claimant-1*). In contract disputes, Texas law requires the Court to "examine the *entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." **Weaver v. Metro. Life Ins. Co.**, 939 F.3d 618, 626 (5th Cir. 2019) (citing **Coker v. Coker**, 650 S.W .2d 391, 393 (Tex. 1983) (emphasis in original)). If the Court interprets the "warranty" section of the Conoco Phillips Provisions as describing *waiver* provisions, it would effectively be rendering the distinct "waiver" section meaningless. The Court

---

[14] The "Waiver" section provides: "no waiver by either party regarding the performance of the other party under any of the provisions of this Agreement shall be construed as a waiver of any subsequent performance under the same or any other provision." (*Id.*).

declines to read beyond the plain language of the contract. For these reasons, the Court denies Debtor's request for summary judgment that the Conoco Phillips Provisions incorporated in the Producer Agreements waived Producers' ability to assert a lien under Texas § 9.343 or the Oklahoma Lien Act.

## CONCLUSION

For the foregoing reasons, it is ORDERED that Debtor/Cross-Claimant First River Energy, LLC's Partial Motion for Summary Judgment (ECF No. 172) is DENIED. The Court will issue an order consistent with this Memorandum Opinion.

# # #